UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARTHA RANGEL, MARIA GUADALUPE MOLINA, ROXANA HERRARA, AND ALICIA BEDOLLA, on behalf of themselves and similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK CUDAHY, LLC,<br><br>Defendant. | Case No.: 14-cv-00799 |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF RULE 23 AND FLSA CLASSES FOR SETTLEMENT PURPOSES ONLY, AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT**

I. **INTRODUCTION**

Subject to Court approval, Plaintiffs Martha Rangel, Maria Guadalupe Molina, Roxana Herrara, and Alicia Bedolla ("Plaintiffs") and Defendant Patrick Cudahy, LLC ("Defendant" or "Cudahy") (collectively "the Parties") have settled Plaintiffs' claims against Defendant. The proposed settlement resolves the claims of Plaintiffs and provides an opportunity for similarly situated persons to join the case and participate in the settlement. For the reasons set forth below, the parties jointly request that the Court: (1) preliminarily approve the parties' Joint Stipulation of Settlement and Release ("Settlement Agreement") (attached hereto as Exhibit 1); (2) provisionally certify a proposed state law class pursuant to Fed. R. Civ. P. 23 for settlement purposes only; (3); conditionally certify a proposed Fair Labor Standards Act ("FLSA") collective action under 29 U.S.C. § 216(b) for settlement purposes only; (4) approve the parties' proposed Notice and Consent to Join Lawsuit and Claim Form (attached hereto as Exhibit 2) for

1

distribution to the potential class members; and (5) schedule a final fairness hearing on a date after the notice and claim period has expired. A proposed order granting the parties' joint motion is attached hereto as Exhibit 3 for the Court's consideration.

## II. PLAINTIFFS' ALLEGATIONS AND DEFENDANT'S DEFENSES

Plaintiffs have worked in various capacities at Defendant's Cudahy, Wisconsin, facility as early as approximately 1994. On June 2, 2014, Plaintiffs filed a Complaint against Defendant in the Circuit Court of Milwaukee County, which Defendant removed to the United States District Court for the Eastern District of Wisconsin. [Doc. No. 1.] Plaintiffs originally asserted three separate causes of action: (1) failure to pay wages for time spent donning and doffing and walking to and from their workstations under Wisconsin wage payment statute and regulations (Count I); (2) failure to pay straight time and overtime wages under the Wisconsin Minimum Wage Law (Count II); and (3) failure to pay for all hours worked under the Wisconsin Wage Payment and Collection Law (Count III). Plaintiffs contend that Defendant violated Wisconsin law by allegedly not paying certain hourly production employees for all the time they spent performing various activities related to obtaining, donning, doffing, and cleaning clothing and equipment.

Defendant answered the Complaint on July 16, 2014. [Doc. No. 4.] In its Answer, Defendant denied liability and raised a number of affirmative and other defenses. Defendant contends that it has at all times properly paid its employee and complied fully with Wisconsin law, the FLSA, and all other applicable legal requirements.

There are a number of hotly contested issues in this litigation. For example, Plaintiffs seek certification of a class pursuant to Rule 23 in the Complaint. While Defendant consents to certification of the proposed class for settlement purposes only, Defendant would vigorously

oppose Plaintiffs' certification motion in the absence of this settlement. Defendant believes that, if the case were to proceed on the merits, it would be inappropriate to proceed on the merits of Plaintiffs' claims on a classwide basis.

The parties also dispute the merits of Plaintiffs' claims. Were this case to proceed, Defendant would intend to file a motion for summary judgment on Plaintiffs' individual claims. In that motion, Defendant would argue that Plaintiffs' individual claims fail because the donning and doffing of the standard work clothing and gear that they wear is not "integral and indispensable" to their principal work activities and, therefore, is not compensable under Wisconsin law. Wisconsin law is unsettled as to the compensability of donning and doffing activities. A case currently pending before the Wisconsin Supreme Court may result in a ruling that negates or undermines Plaintiffs' claims.

As more fully explained below, both parties took these things into account during settlement negotiations. The parties weighed the risks inherent in these hotly contested issues and reached an amicable and fair compromise to the litigation in light of the risks.

## III. TERMS OF THE PROPOSED SETTLEMENT

Counsel for the Parties engaged in private settlement discussions to resolve this action. The Parties engaged Joseph Dixon of Henson & Efron, P.A., an experienced mediator, to assist with the settlement discussions. The Parties attended an all-day mediation session with Mediator Dixon on April 27, 2015. Prior to the mediation session, Defendant provided extensive timekeeping, payroll, and other data to facilitate meaningful settlement discussions. At the mediation, the Parties negotiated and agreed upon the principal terms of a settlement. The parties then negotiated the detailed terms of the Settlement Agreement and Notice to the class.

The terms of the settlement are set forth in the Settlement Agreement attached hereto as Exhibit 1.

      **A.**     <u>**Monies Made Available to be Claimed By the Class Members.**</u>

The Settlement Agreement provides that Defendant agrees to make available up to One Million Dollars ($1,000,000.00), inclusive of attorneys' fees and small enhancement awards to certain named Plaintiffs, to settle this action (the "Settlement Fund"). Plaintiffs' attorneys' fees and costs and expenses in an amount not to exceed $333,333.00, the enhancement awards, and the costs of the settlement administrator, shall be paid from the settlement fund of $1,000,000.00.

Under the Settlement Agreement, the amount made available to each Class Member will be determined pursuant to an allocation formula based on the number of workweeks in which each Class Member worked in a qualifying position during the relevant time period. The Net Settlement Fund (defined as the Settlement Fund less the amount of attorneys' fees and costs, claims administration costs, and enhancement awards that are approved by the Court) will be divided by the total number of workweeks worked by each Class Member (regardless of whether that Class Member returned a claim form) in a qualifying position between June 2, 2012 and the end of the class period to determine a gross per week settlement amount. The gross settlement share made available for each Class Member to claim shall then be determined by multiplying the per week settlement payment by the number of workweeks worked by that Class Member in a qualifying position during the relevant period. Only those Settlement Class Members who timely return a Consent to Join Lawsuit and Claim Form will be entitled to payment.

The parties believe this is a fair way to estimate the damages for each Class Member. Other courts have approved settlements which calculate class members' pro rata shares of an

4

FLSA settlement based upon the number of weeks or pay periods the class members worked in a qualifying position during the relevant time period. *See, e.g., Danieli v. IBM*, Case No. 1:08-cv-03688-SHS, Doc. No. 94 (S.D.N.Y.) (proposed settlement agreement which was approved by the court allocated pro rata settlement shares based upon the number of pay periods worked in a qualifying position); *Guidry, et al. v. Chenega Integrated Systems, LLC, et al.*, Case No. 5:07-CV-00378-D, Doc. No. 561 (W.D. Okla. Jan. 19, 2011) (same).

Settlement payments to Class Members who submit a timely claim will be allocated as follows: (1) two thirds of the total payment to each Class Member shall be allocated to wage claims; and (2) one third of the total payment to each Class Member shall be allocated to all non-wage claims, including liquidated damages, interest and other applicable statutory penalties. The wage portion shall be subject to deductions as required by law. The non-wage portion shall be paid without deductions. All employer-paid taxes on the wage portions of the Settlement will be paid by Defendant. Defendant will provide to each Class Member receiving a payment from the Settlement fund an IRS Form W-2 (for wages) and an IRS Form 1099 (for non-wages). Defendant will also provide an IRS Form 1099 for the amount of the enhancement awards, attorneys' fees, costs, and expenses awarded by the Court.

**B.    Scope of Release.**

Upon final approval by the Court of the Settlement Agreement, each Member of the Settlement Class will fully release and discharge (i) Cudahy; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Cudahy; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an

entity referenced in or encompassed by subsection (i) or (ii) hereof; from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in this case, which means all claims for allegedly uncompensated wages, and including associated liquidated damages, interest, and penalty claims that were asserted or could have been asserted in this lawsuit under state or federal law. This release includes all FLSA or other federal wage claims plus all claims under state minimum wage laws, state wage payment and collection laws, state overtime statutes, under state common law and equitable principles, and pursuant to express or implied wage contract claims. This release includes any claims which are derivative of the claims being released.

All members of the Settlement Class who return the Consent to Join Lawsuit and Claim Form will give their consent to become a party Plaintiff and to release any and all wage and hour claims they have or may have, including claims under the FLSA, Wisconsin law, and any other state, federal, or local law governing the payment of wages. Individuals who timely deliver a Request for Exclusion will not be bound by the settlement or class release as to any of their claims and will not receive any money. For the members of the Settlement Class who do not return either a Consent to Join Lawsuit and Claim Form or a Request for Exclusion, they will be members of the Rule 23 class and will be bound by the Rule 23 class release and dismissal with prejudice. Class members who do not return either a Consent to Join Lawsuit and Claim Form or a Request for Exclusion will not be members of the FLSA class, and the preclusive effect of this settlement on any future FLSA claims by those people would be determined by the court in which any such future claims were brought.

The Settlement Agreement also provides that the following language will be contained on the back of the checks sent to the Class Members:

> My signature on, deposit, or cashing of this check confirms that I agree to all terms of the Settlement Agreement in *Rangel, et al. v. Patrick Cudahy, LLC* and waive any right to bring suit for back wages under Wisconsin Law, the Fair Labor Standards Act, or any other federal, state, or local law through the date I cash this check.

The foregoing release language is similar to release language contained in FLSA settlement agreements approved by other courts. *See, e.g., Guidry, et al. v. Chenega Integrated Systems, LLC, et al.*, Case. No. 5:07-CV-00378-D, Doc. No. 561 (W.D. Okla. Jan. 19, 2011); *Kuhl, et al. v. Guitar Center Stores, Inc., et al.*, Case No. 1:07-cv-00214, Doc. No. 133 (N.D. Ill. July 21, 2010); *Phelps, et al. v. Parsons Technical Support, Inc.*, Case No. 2:09-cv-0327-JMS-WGH, Doc. No. 163 (S.D. Ind. Aug. 15, 2011); *Garner, et al. v. Butterball, LLC*, Case No. 4:10-cv-01025-JLH, Doc. No. 186 (E.D. Ark. Aug. 31, 2012), *Helmert, et al. v. Butterball LLC*, Case No. 4:08-cv-00342-JLH, Doc. No. 465 (E.D. Ark. Aug. 31, 2012).

### C. Attorneys' Fees, Costs, and Enhancement Awards.

The Settlement Agreement provides that Plaintiffs' Counsel may apply to the Court for payment from the Settlement Fund of no more than $333,333.00 in attorneys' fees and costs and expenses of litigation, which is to be paid from the gross settlement fund of $1,000,000.00. Defendant has agreed not oppose Plaintiffs' requests for attorneys' fees and costs/expenses. Defendant will provide to Plaintiffs' counsel an IRS Form 1099 for the amount of attorneys' fees awarded by the Court.

The Settlement Agreement provides that Plaintiffs' Counsel may also apply for approval of enhancement awards to certain named Plaintiffs (Rangel, Herrera, and Bedolla) of no more than $2,000.00 each in recognition of their role and participation as Named Plaintiffs and the general release executed by Plaintiffs. These enhancement awards are to be paid out of the

7

Settlement Fund.  Defendant also will not oppose this request.  Defendant will provide an IRS Form 1099 to Plaintiffs for the amount of the enhancement awards by the Court.

The Parties agree that the remaining portions of the Settlement Agreement are not contingent on the amount of any attorneys' fees, costs and expenses, or enhancement awards that are granted by the Court.  Thus, if the Court denies or awards less than Plaintiffs' counsel's application for attorneys' fees and costs, or if the Court denies or awards less than Plaintiffs' request for enhancement awards, the Parties nevertheless request that the Court approve the remaining portions of the Settlement Agreement.  Because the attorneys' fees and enhancement awards by the Court will be deducted from the Settlement Fund prior to calculation of the settlement shares made available for each Class Member to claim, any amount of attorneys' fees or enhancement awards that are not approved by the Court will remain in the Net Settlement Fund.

**IV.     ARGUMENT**

    **A.     Certification of the State Law and FLSA Classes is Appropriate Under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 For Settlement Purposes Only.**

The parties agree that certification of the proposed state law and FLSA classes is appropriate under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for settlement purposes only.  The proposed class is defined as all persons who worked at Defendant's Cudahy, Wisconsin facility in any of the "Production Employee Job Categories" listed in Exhibit A to the Settlement Agreement, who are or were paid on an hourly basis and who are or were required to wear sanitary clothing or protective gear, from June 2, 2012 until the date the Court preliminarily approves the settlement.  The Settlement Class also includes hourly line workers whose time was recorded and reported using Defendant's timekeeping system and who were working at the Cudahy facility as temporary workers employed by a staffing company, without regard to

whether Defendant was a joint employer of those individuals. Such individuals shall be included without regard to citizenship and Plaintiffs have moved to amend the Complaint to restore the original class definition, which was without regard to the citizenship of the Parties. The Complaint was also amended to assert a claim under the FLSA.

The parties agree that the proposed Rule 23 class meets the requirements of Fed. R. Civ. P. 23 for purposes of evaluating the terms of the settlement. The parties agree that the elements of Rule 23(a) are met, as there were approximately 669 putative class members employed at any given time during the relevant time period (numerosity), the question of the fairness of the terms of the settlement is common to all class members (commonality), Named Plaintiffs' claims are typical of the claims of the putative class members for purposes of determining the fairness of the settlement (typicality), and Named Plaintiffs Rangel, Herrera, and Bedolla and their counsel will fairly and adequately protect the interests of the class during the settlement approval process. The parties also agree that the elements of Rule 23(b)(3) are met for purposes of evaluating the terms of the settlement, as the question of the fairness of the settlement will predominate over any individualized issues that may arise during the settlement approval process. Thus, provisional certification of the state law class is appropriate under Fed. R. Civ. P. 23.

The parties also agree that the foregoing individuals are "similarly situated" solely for purposes of determining whether the terms of the parties' proposed settlement are fair. All of the foregoing individuals worked in positions during the relevant time period that were paid according to Defendant's pay policy, which are challenged in this lawsuit. Thus, conditional certification of the FLSA class is appropriate under 29 U.S.C. § 216(b) for settlement purposes only.

Courts routinely provisionally certify FLSA and Rule 23 classes under similar circumstances for the sole purpose of determining whether the parties' proposed settlement is fair. *See*, *e.g.*, *Churchill v. Farmland Foods, Inc.*, Case No. 4:06-cv-04023-MMM-JAG, Doc. No. 31 (C.D. Ill. May 30, 2007); *Danieli v. IBM*, Case No. 1:08-cv-03688-SHS, 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009) ("The Court finds that the members of the Class are similarly situated within the meaning of Section 16(b) of the Fair Labor Standards Act . . . for purposes of determining whether the terms of the settlement are fair"); *Dugan, et al. v. Restaurant Management, Inc.*, Case No. 2:09-cv-01747-ADS-ARL, Doc. No. 37 (E.D.N.Y.) (conditionally certifying FLSA and Rule 23 classes for settlement purposes); *Diaz v. Eastern Locating Services*, Case No. 1:10-cv-04082-JCF, Doc. No. 36 (S.D.N.Y. July 22, 2010) (provisionally certifying Rule 23 class for settlement purposes and authorizing notice to putative class members informing them of the terms of the settlement); *Gonzalez v. Fellowes, Inc.*, Case No. 10-cv-7682, Doc. No. 48 (N.D. Ill. Jan. 13, 2012) (approving Rule 23 notice which informed the putative class members of the litigation and the settlement in the same notice); *Rosales, et al. v. Thermal Insulation, Inc.*, Civil Action No. 1:10-cv-1970-JOF, Doc. No. 31 (N.D. Ga. September 9, 2011); *Kuhl v. Guitar Center Stores, Inc.*, Case No. 1:07-cv-00214, Doc. No. 133 (N.D. Ill. July 21, 2010); *Hosier v. Mattress Firm, Inc.*, Case No. 3:10-cv-00294-TJC-JRK, Doc. No. 57 (M.D. Fla. Jan. 23, 2012); *Storms v. Patel*, Case No. 1:11-cv-6743, Doc. No. 60 (N.D. Ill. Nov. 29, 2012); *Tobin v. Beer Capitol Distrib.*, 2012 U.S. Dist. LEXIS 151059 (E.D. Wis. Oct. 19, 2012).

Accordingly, the parties request that the Court certify the foregoing class of individuals under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 for the limited purposes of determining whether

the terms of the proposed settlement are fair and to approve notice to putative class members to give them the chance to assert a claim or request exclusion from the settlement.

### B. Preliminary Approval of the Settlement is Appropriate Under the Rule 23(e) and the FLSA.

#### 1. Standard for approval.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.") (citations omitted). "Although such settlements must be approved by the district court, [the court's] inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.* (citations omitted). Because the parties wish to settle state law claims on a class wide basis pursuant to Fed. R. Civ. P. 23 and also FLSA claims on behalf of all similarly situated individuals pursuant to 29 U.S.C. § 216(b), the settlement must be reviewed by the Court both the requirements of Fed. R. Civ. P. 23(e) and also under FLSA principles. *See Nicholson v. UTI Worldwide, Inc.*, 2012 U.S. Dist. LEXIS 12177 (S.D. Ill. Feb. 1, 2012).

Federal R. Civ. P. 23(e) requires that a court approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "In order to evaluate the fairness of a settlement, a district court must consider 'the strength of Plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. Ill. 2006). "So long as the integrity

11

of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement . . . and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997) (internal citations omitted).

Courts in the Seventh Circuit often follow a two-step process in reviewing class action settlements:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. Manual for Complex Litigation § 1.46, at 53-55 (West 1977). If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard. The goal of the fairness hearing is to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is "fair, reasonable, and adequate." Manual for Complex Litigation at 57. On the basis of all information available to him, the trial judge must decide whether or not to approve the proposed settlement.

*Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093, at *8-9 (N.D. Ill. Oct. 10, 1995) (quoting *Armstrong v. Bd. Of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980)).

At the initial "preliminary approval" stage, "the court's task is merely to determine whether the proposed settlement is within the range of possible approval, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2011 U.S. Dist. LEXIS 84219, 32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Courts often presume settlements to be fair and adequate when the proposed settlement "is the product of arm's-length negotiations, sufficient discovery

has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." *Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *10, n.2 (N.D. Ill. Oct. 10, 1995) (citing *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975); *Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 667 (S.D.N.Y. 1981)).

Similarly, in the context of an FLSA settlement, Courts must scrutinize the proposed settlement for fairness. *Drew v. Shoe Show, Inc.*, 2012 U.S. Dist. LEXIS 11404, at *2-3 (S.D. Ill. Jan. 31, 2012) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986)). "In its review of the proposed settlement, the Court will examine (1) whether the proposed settlement brings resolution to a bona fide dispute as opposed to simply accomplishing a waiver of statutory rights, (2) whether the proposed settlement is a reasonable compromise of the issues in dispute, (3) whether the proposed settlement was obtained fairly and not by overreaching by the defendants, and (4) any other matter relevant to the fairness of the settlement." *Id.* (citing *Lynn's Food*, 679 F.2d at 1354). *See also Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, at *31, n.9 (N.D. Ill. Oct. 6, 2011) ("[T]he Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."). Typically, courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores*, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.").

## 2. The Court should preliminarily approve the settlement.

Here, the parties ask the Court to take the first step in the approval process by granting preliminary approval of the settlement, authorizing distribution of the parties' proposed notice to the Class Members, and scheduling a final fairness hearing.[1] The settlement of this Action constitutes a fair and reasonable resolution of the claims asserted in this case. The settlement was the result of lengthy arm's-length negotiations between counsel for Plaintiffs and Defendant, with each side weighing the risks of establishing liability, damages, and defenses. While both Plaintiffs and Defendant believe their positions are meritorious, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain and lengthy. Accordingly, the settlement reflects a reasonable compromise of bona fide disputes.

Both parties recognize the inherent risks present in this litigation. For example, as explained above, the parties would vigorously contest whether certification of Plaintiffs' claims is appropriate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. While Defendant concedes that certification of Plaintiffs' claims is appropriate for purposes of determining whether the terms of this settlement are fair and reasonable, Defendant continues to assert that Plaintiffs' claims are not appropriate for full adjudication on the merits on a classwide basis. Both parties recognize the inherent risks associated with the certification issues.

Both parties also recognize the inherent risks associated with the merits of Plaintiffs' claims. The parties also dispute whether Plaintiffs can prove the merits of their class claims on a

---

[1] The parties do not believe an initial hearing is necessary prior to preliminary approval of the settlement. However, to the extent the Court would like to have a hearing before preliminarily approving the settlement, the parties respectfully request that any such hearing be conducted by telephone rather than in person.

classwide basis. The parties again recognize the inherent risks associated with litigating the merits of Plaintiffs' individual and class claims.

Since December 2014, the Parties have been engaged in both formal and informal discovery and the exchange of information in an effort to facilitate well-informed settlement discussions. Plaintiffs' counsel thoroughly reviewed time keeping data, payroll data, plant diagrams, and other information provided by Defendant prior to settlement negotiations. Thus, the Parties entered into the settlement after having engaged in substantial fact gathering. On April 27, 2015, the Parties engaged the services of an experienced mediator familiar with wage and hour litigation to assist the Parties in reaching a resolution of this dispute.

In light of the foregoing risks related to the merits of the litigation, the parties recognize that the spectrum of possible recovery varies significantly. All parties recognize the possibility that Defendant could succeed in demonstrating the Class Members were properly compensated, which would result in no recovery for Plaintiffs or the Class Members. At the same time, all parties recognize that the Plaintiffs and the Class Members could succeed in demonstrating they worked some uncompensated overtime, which could result in an award of damages. Because the settlement represents a good faith compromise between the parties on numerous bona fide disputes, and the parties request that the Court preliminarily approve the settlement.

### C. The Proposed Notice is Appropriate.

The parties also ask the Court to approve the Proposed Notice of Settlement attached hereto as Exhibit 2 and the parties' proposed notice process. Before approving a class action settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In cases such as this, where no prior class action notice has been given to the potential class members, "the rights of absent class members

to exclude themselves from the action under Rule 23(c)(2) are preserved by combining the notice of settlement hearing with notice of opportunity for exclusion from the action." *Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, at *41 (N.D. Ill. Oct. 6, 2011) (citing *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350-51 (N.D. Ill. 2010)). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *In re AT&T*, 270 F.R.D. at 351 (citations omitted).

The contents of the parties' proposed Notice comply with the foregoing requirements. The proposed Notice informs the putative Class Members of the nature of the lawsuit, the terms of the settlement, their options, the impact the settlement has on their claims, where to find additional information about the case and the proposed settlement, and their ability to appear and be heard at the final fairness hearing. (*See* Exhibit 2 attached hereto.)

The parties' proposed notice procedure also constitutes the best notice that is practicable under the circumstances. *See* Fed. R. Civ. P. 23(c)(2)(B). Within 20 days after preliminary approval by the Court of the Settlement Agreement and proposed Notice, the claims administrator will send the Notice to all Class Members via first class mail to their last known addresses. Any Notice returned to the claims administrator as undeliverable shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the claims administrator will perform a standard skip trace to attempt to determine the most current mailing address and resend the Notice to that address.

The Class Members will have 45 calendar days after mailing of the Notice within which to return their claim forms. There are three possibilities for each person who receives the Notice:

1. Send in the Consent to Join Lawsuit and Claim Form, get payment, and be bound by the Rule 23 class release, the FLSA release, and the dismissal with prejudice;

2. Send in a letter to the Claims Administrator requesting exclusion from the class ("Request for Exclusion"), do not get payment, and not be bound by the Rule 23 class release, the FLSA release, or the dismissal with prejudice; or

3. For the members of the Settlement Class who do not return either a Consent to Join Lawsuit and Claim Form or a Request for Exclusion, they will not get payment, but they will be members of the Rule 23 class and will be bound by the Rule 23 class release and dismissal with prejudice. Class members who do not return either a Consent to Join Lawsuit and Claim Form or a Request for Exclusion will not be members of the FLSA class, and the preclusive effect of this settlement on any future FLSA claims by those people would be determined by the court in which those claims are brought.

After the close of the claim period, the parties propose that the Court hold a fairness hearing, at which the Court will determine whether to finally approve the settlement. Plaintiffs' counsel will file with the Court – at least 5 days prior to the final fairness hearing – a declaration from the claims administrator outlining the claims administrator's actions in mailing the Notice. At the fairness hearing, any individual who received the Notice will be given an opportunity to state their objections to the settlement (if they have complied with the objection procedures outlined in the Notice). The parties will ask the Court to issue an order of final approval after the fairness hearing. If the Court issues final approval of the settlement, Defendant will tender all settlement payments approved by the Court within 45 days after the time to appeal the Court's final approval order has expired (or final resolution of any appeal which has been filed and not dismissed).

The parties believe this is the best method of notice as it fully discloses all aspects of the litigation, including the fact that the case has already been settled subject to final approval by the Court, and it is the most efficient method of effectuating the terms of the Amended Settlement Agreement. Other courts have approved similar notice procedures in connection with FLSA

17

settlements. *See, e.g., Dugan, et al. v. Restaurant Management, Inc.*, Case No. 2:09-cv-01747-ADS-ARL, Doc. No. 37 (E.D.N.Y. May 19, 2011) (conditionally certifying FLSA and Rule 23 classes for settlement purposes and authorizing mailing of notice informing the putative class members of the lawsuit and the terms of the settlement); *Danieli v. IBM*, Case No. 1:08-cv-03688-SHS, 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009) (conditionally certifying FLSA class for settlement purposes and approving notice which informs putative class members of litigation and essential terms of settlement); *Diaz v. Eastern Locating Services*, Case No. 1:10-cv-04082-JCF, Doc. No. 36 (S.D.N.Y. July 22, 2010) (provisionally certifying Rule 23 class for settlement purposes and authorizing notice to putative class members informing them of the terms of the settlement); *Gonzalez v. Fellowes, Inc.*, Case No. 10-cv-7682, Doc. No. 48 (N.D. Ill.) (approving Rule 23 notice which informed the putative class members of the litigation and the settlement in the same notice); *Rosales, et al. v. Thermal Insulation, Inc.*, Civil Action No. 1:10-cv-1970-JOF (N.D. Ga. September 9, 2011); *Kuhl v. Guitar Center Stores, Inc.*, Case No. 1:07-cv-00214, Doc. No. 133 (N.D. Ill. July 21, 2010); *Hosier v. Mattress Firm, Inc.*, Case No. 3:10-cv-00294-TJC-JRK, Doc. No. 57 (M.D. Fla. Jan. 23, 2012) (conditionally certifying FLSA class for purposes of settlement and approving notice which informed putative class members of lawsuit and settlement in same notice).

**V.      CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement Agreement; (2) provisionally certify a proposed state law class pursuant to Fed. R. Civ. P. 23 for settlement purposes only; (3) conditionally certify a proposed FLSA collective action under 29 U.S.C. § 216(b) for settlement purposes only; (4) approve the parties' proposed Notice of Settlement and Consent to Join Lawsuit and Claim

Form for distribution to the potential class members; and (5) schedule a final fairness hearing on a date after the notice and claim period has expired.  A proposed order is attached hereto as Exhibit 3 for the Court's consideration.

Respectfully submitted this 22nd day of July, 2015.

| **ATTORNEYS FOR PLAINTIFFS:** | **ATTORNEYS FOR DEFENDANT:** |
|---|---|
| ARELLANO & PHEBUS, S.C. | JACKSON LEWIS P.C. |
| /s/Kurt C. Kobelt_____ | /s/Brian A. Price_____ |
| Kurt C. Kobelt | Brian A. Price, Esq. |
| State Bar No. 1019317 | State Bar No. 1000862 |
| kkobelt@aplawoffice.com | 330 E. Kilbourn Avenue, Suite 560 |
| Victor M. Arellano | Milwaukee, WI 53202 |
| State Bar No: 1011684 | Telephone: (414) 944-8900 |
| varellano@aplawoffice.com | Facsimile: (414) 944-8901 |
| 1468 North High Point Road, Suite 202 | brian.price@jacksonlewis.com |
| Middleton, WI 53562 | |
| Telephone: 608-827-7680 | /s/D. Christopher Lauderdale_____ |
| Fascimile: 608-827-7681 | D. Christopher Lauderdale (SC Bar #64221) |
| | (admitted *pro hac vice)* |
| | lauderdc@jacksonlewis.com |
| | JACKSON LEWIS P.C. |
| | 15 South Main Street, Suite 700 |
| | Greenville, SC 29601 |
| | Tel: 864-232-7000 |
| | Fax: 864-235-1381 |
| | |
| | */s/L. Dale Owens*_____ |
| | L. Dale Owens (GA Bar #557482) |
| | (admitted *pro hac vice*) |
| | owensd@jacksonlewis.com |
| | JACKSON LEWIS P.C. |
| | 1155 Peachtree Street NE, Suite 1000 |
| | Atlanta, GA 30309 |
| | Tel: 404-525-8200 |
| | Fax: 404-525-1173 |